LEIPER (SIMPSON v.).  See Case No. 12,884.

---

## Case No. 8,223.

### LEITCH v. The GEORGE LAW.

[6 Am. Law Reg. (1858) 368.]

District Court, S. D. New York.

PILOTS—CLAIM OF LIEN FOR SERVICE OFFERED—
STATE STATUTE—PERSONAL DELINQUENCY
—How COLLECTED.

The steamship George Law coming into the port of New York, was spoken by a licensed pilot, who offered his services as such legally licensed pilot, which were refused; he then demanded a certain sum, claiming to be entitled to it under the pilotage laws enacted by state statute, and libeled the ship: held, that he had no lien, and that the ship was not liable.

[Overruled in The Edith Godden, 25 Fed. 511.]

The libel alleges that on the 12th of June, 1857, the libelant [Thomas Leitch] was a pilot, duly licensed and qualified according to the laws of the state of New Jersey and the statutes of the United States, to pilot vessels to and from the port of New York, by way of Sandy Hook; that being then on board the pilot-boat Thomas H. Smith, upon the high seas, and within the admiralty and maritime jurisdiction of this court, about eight miles off Barnegat, seeing the said steamship George Law (sailing under a register) approaching, drawing thirteen feet of water, and bound to the port of New York, said steamship not having been before that spoken by a licensed pilot, he immediately spoke said steamship and offered her master his services as piot, to pilot said steamship into the port of New York as the master of said steamship might direct, which offer and services aforesaid the master refused, and that thereby the libelant became entitled, by law, to demand and receive from the master and owner of said ship the sum of $39.65; that neither the master nor owner of said ship has paid that sum, but it yet remains, though often demanded, due and unpaid. Wherefore the libelant prayed process or attachment against the ship, &c. The owner of the ship intervened in the cause, and filed his exceptive allegations to the libel: (1) That the libel and the matters therein set forth are not sufficient in law to constitute a lien upon the ship; (2) that the libel does not state any service rendered to the ship which constitutes a lien; and (3) that the libel claims a penalty, and that the claim is not within the jurisdiction of the court.

Mr. Nudgett, for libelant.
Bebee, Dean & Donohue, for claimants.

BETTS, District Judge. Congress has not enacted specific regulations governing the subject of pilotage, into or out of the United States. The act of August 7, 1789, § 4, provides that all pilots in the bays, inlets, rivers, harbors and ports of the United States, shall continue to be regulated in conformity with the existing laws of the states respectively wherein such pilots may be, or with such laws as the states may respectively hereafter enact for the purpose, until further legislative provision shall be made by congress. 1 Stat. 54. And by the act of March 2, 1837, it is declared that it shall and may be lawful for the master or commander of any vessel coming into or going out of any port, situate upon the waters which are the boundary between two states, to employ pilots duly authorized by the laws of either of the states bounded on said waters, to pilot said vessel to or from said port, any law, usage or custom to the contrary notwithstanding. 5 Stat. 153. This latter act grew out of the difficulties subsisting at this port between pilots licensed under the laws of this state and New Jersey. In this case the libelant was a pilot, licensed according to the laws of the state of New Jersey, and a grave question might perhaps arise whether his privileges and rights under that license are to be determined in this case by the laws of that state or those of New York, as the libel does not aver that the right he sets up here is given him by the laws of both states; but the decision will be placed in this instance upon other considerations, and that point will not enter into the judgment rendered.

It would seem manifest that congress, in the enactments referred to, contemplated nothing beyond the official doings and liabilities of pilots as subjects of regulations by state laws, which were to be adopted and enforced by the authority of the federal government. It is declared that "all pilots in the ports of the United States shall continue to be regulated in conformity with the existing laws of the states, respectively, wherein such pilots shall be." Pilots, as public officers, and the acts of pilots, are provisionally admitted to be governed by the regulations

of state laws until congress shall itself legislate further upon the matter. Subsidiary provisions in state laws, which tend to the advantage of pilots in the enjoyment of their offices, would not seem to be necessarily regulations of the offices themselves, or of the incumbents of the offices; they might rather, as they purport to be in the laws of the state in question (act of April 3, 1857, and of February 19, 1819, § 20), mulcts and penalties inflicted upon third parties, for acts or omissions in derogation of the policy of the laws themselves. This point has been ably discussed, in some of its bearings, in Cooley v. Board of Wardens of Port of Philadelphia, 12 How. [53 U. S.] 299, and decided by a closely divided court, in so far as to determine that the state laws governing pilots are laws regulating navigation and not commerce. The act of congress of 1781, therefore, constitutes such state laws laws of the United States to that effect, and also as such, no doubt, supplies them the force and remedies applicable to statutes of the United States, in declaring and securing the right to pilotage fees when pilotage service, offered as provided in this act, is refused. On that acceptation the statute of a state, subjecting the owners of vessels to half pilotage fees or other penalty for refusing to employ pilots to navigate their vessels, is no infringement of the constitution of the United States, and may be enforced by suits in the state courts, and probably in the federal courts also. But the supreme court has nowhere determined the method of procedure by which the statutory regulation may be enforced, and, accordingly, the forms of process authorized in the United States courts must be used, and those peculiar to the state judicatories. The Robert Fulton [Case No. 11,890]. The rule of decision, in many cases of jurisdiction, is derived by the national tribunals from state laws, but the law of practice in the United States courts is universally dependent upon the authority of federal enactment or usages. The adoption of a general principle of law from the state code or its customs, never carries with it into the United States jurisprudence the remedies or processes through which it was there sanctioned and executed. [The Orleans v. Phoebus] 11 Pet. [36 U. S.] 175; [Suydam v. Broadnax] 14 Pet. [39 U. S.] 67; [Wayman v. Southard] 10 Wheat. [23 U. S.] 1. If, then, there is in the state law a provision making such reward to pilots a charge upon the vessels, when masters or owners refused pilotage service, it would not follow that the remedy against the vessel would attend the execution of the law in the federal courts.

The allowance made by the state law is not the pilotage—it is a remuneration exacted from masters and owners of vessels personally, because pilotage service is refused by them, and in that way the reward the officer would be entitled to as compensation for his preparing and offering himself to the performance of this duty is withheld, and thus a provision of law highly important to the public interests of trade and navigation is frustrated. It is not necessary to consider whether it be competent for the legislature to impose this charge as a lien on vessels. It is not made such by positive law, and it does not become such by the marine law. The decision of the supreme court, before referred to,—[Cooley v. Board of Wardens of Port of Phila.] 12 How. [53 U. S.] 299,—rests upon the doctrine that the state laws are regulations of the subject of pilotage and of the owners and masters of vessels in their transactions in relation to pilotage, and is nowhere referred to as affecting the vessels in rem. The liability of the masters and owners to this mulct for a personal delinquency would no way impose a liability upon the vessel to satisfy their obligation; and as the law does not impose the obligation on the ship, no action can be maintained in rem to cover the demand. Besides, this libel is in personam only. It does not charge a liability of the ship to the claim, and although it prays process and a decree against her therefor, there is no averment of a lien which would entitle the libelant to take a decree in condemnation of the ship. The exceptive allegations to the sufficiency of the libel and the right of action against the ship upon the averments of the libel are, therefore, allowed, and the libel is dismissed, with costs.